FILED _____ ENTERED
LODGED _____ RECEIVED

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SEP 2 6 2001

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

DAVID MASON, <u>et al.</u>              :
                                         :
                                         :
v.                                       :      Civil Action WMN-00-562
                                         :
                                         :
HONEYWELL INTERNATIONAL                  :
INC, <u>et al.</u>                        :

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LEONARD EMALA, <u>et al.</u>            :
                                         :
                                         :
v.                                       :      Civil Action WMN-00-2749
                                         :
                                         :
HONEYWELL INTERNATIONAL                  :
INC, <u>et al.</u>                        :


<u>**MEMORANDUM**</u>

These actions were brought by former employees and

beneficiaries of Defendant Honeywell International, Inc.

("Honeywell") alleging several violations of the Employee

Retirement Income Security Act of 1974 ("ERISA") and the

Consolidated Omnibus Reconciliation Act of 1986 ("COBRA").  Civil

Action WMN-00-562 is a class action lawsuit[1] now before the Court

on the parties' cross-motions for partial summary judgment as to

---

[1]  On April 6, 2001, the Court signed an order certifying
class status as to Counts One through Four and Count Seven of
Plaintiffs' Complaint.  The classes include former salaried
Honeywell employees who had participated in Honeywel's medical
and pension plans, and their spouses and dependents.

Count 1 (COBRA violation); Plaintiffs' motion for partial summary

judgment as to Counts 5 and 6 (ERISA Reporting and Disclosure Act

violations); Defendant Honeywell's motion for partial summary

judgment as to Count 7 (ERISA Failure to Notify of Reduction in

Future Benefit Accruals); and Defendant Raytheon's motion to

dismiss Honeywell's cross-claim for indemnification and

contribution arising out of the COBRA claim.

The section of this memorandum that addresses plaintiffs'

motions for summary judgment on Counts 5 and 6 of WMN-00-562 also

addresses plaintiffs' motion for summary judgment on Count 1 of

WMN-00-2749.  The factual and legal issues raised by the parties

in these three counts are sufficiently similar to call for a

joint memorandum by the Court.

The motions have been exhaustively briefed and are ripe for

decision.  Upon a review of the pleadings and the applicable case

law, the Court determines that no hearing is necessary.  Local

Rule 105.6.

## I. BACKGROUND

Plaintiffs' complaints in both cases arise out of a 1998

corporate transaction between AlliedSignal Inc. ("AlliedSignal")

and Raytheon Corporation ("Raytheon").  Prior to the transaction,

plaintiffs were employees (and their beneficiaries) of

2

AlliedSignal at their Towson, Maryland facility.  On September 9,
1998, Raytheon purchased the assets of AlliedSignal's Towson
facility.  On that date, Plaintiffs were terminated from
AlliedSignal and began employment with Raytheon.  Subsequently,
in December 1999, AlliedSignal acquired Honeywell Inc. and
changed the name of the combined corporation to Honeywell
International Inc..  This Memorandum will refer to AlliedSignal
and Honeywell International collectively as "Honeywell."[2]

    Raytheon purchased the Honeywell facility pursuant to an
Asset Purchase Agreement ("APA") negotiated by the two companies.
The APA required Raytheon to provide employees who had
transferred from Honeywell ("Transferred Employees") with at
least one year of compensation at rates no lower than before the
sale, and benefits "in kind and amount that are comparable in the
aggregate" to those received by Honeywell employees prior to the
sale.  Def.'s Cross-Mot. for Part. Summ. J. as to Counts One and
Seven, Ex. 2A at 37.  More specifically, provisions of the APA
governed Raytheon's obligations to Transferred Employees in areas
such as group health insurance, pension plans, retirement health
plans, severance pay, and other benefits.  Plaintiffs' claims in
this lawsuit involve the terms and conditions of the asset sale

_____

[2] Additionally, the various AlliedSignal and Honeywell
employee benefit plans discussed herein will be referred to
solely as Honeywell plans.

3

as it related to Plaintiffs' benefit plans, as well as
Honeywell's alleged failure to provide Plaintiffs with various
notices and documentation as required by ERISA and COBRA.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

All but one of the motions now before the Court are for
summary judgment.[3]  Summary judgment is appropriate where there
is no genuine issue as to any material fact and the moving party
is entitled to summary judgment as a matter of law.  Fed. R. Civ.
P. 56(c);   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A party seeking summary judgment bears the initial
responsibility of informing the court of the basis of its motion
and identifying the portions of the opposing party's case which
it believes demonstrate the absence of a genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  The non-moving party is entitled to have "all reasonable
inferences . . . drawn in its respective favor."  Felty v.
Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of
material fact and that the movant is entitled to summary judgment
as a matter of law, the non-moving party must, in order to
withstand the motion for summary judgment, produce sufficient

---

[3]   Raytheon's motion to dismiss, which carries a different
legal standard, will be addressed later in this memorandum.

4

evidence in the form of depositions, affidavits or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. Unsupported speculation is insufficient to defeat a motion for summary judgment. Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)).

When both parties file motions for summary judgment, the court applies the same standards of review. Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991); ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 45 n. 3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material facts on a motion for summary judgment--even where ... both parties have filed cross motions for summary judgment")(emphasis omitted), cert. denied, 469 U.S. 1215 (1985). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co., 627 F.Supp. 170, 172 (D. Md. 1985)(quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720 (2d ed. 1993)). Both motions may be denied. See Shook v. United States, 713 F.2d 662, 665 (11th Cir. 1983).

### III.   DISCUSSION

#### A.   The COBRA Claims (Count 1 of WMN-00-562)

Plaintiffs' COBRA claims arise out of the following

undisputed events which transpired after the asset sale of the

Towson facility on September 9, 1998.  On that date, Honeywell

and Raytheon entered into a further agreement concerning the

provision of health care benefits to Transferred Employees.

Specifically, Honeywell agreed to continue administering the same

medical, retiree medical, and other benefit plans for Transferred

Employees and their beneficiaries until March 31, 1999.  For this

period, from September 9, 1998 through March 31, 1999, the health

plans continued on identical terms as before the sale.  Def.'s

Cross-Mot. for Part. Summ. J. as to Counts One and Seven, Ex. 2B

at 3.  Then, on April 1, 1999, the Transferred Employees became

participants in Raytheon's health plans.  Under the APA, Raytheon

agreed, inter alia, that their health plan would "waive any pre-

existing limitation or exclusion" for Transferred Employees and

"credit all payments made for health care expenses during the

current plan year for purposes of deductible, co-payments and

maximum out-of-pocket limits."  Def.'s Cross-Mot. for Part. Summ.

J. as to Counts One and Seven, Ex. 2A at 44.  The Raytheon health

plan did, however, contain differences in coverage from that of

6

Plaintiffs' health plan with Honeywell. Pl.'s Mot. for Part. Summ. J. as to Count 1, Ex. 8.

Under COBRA, 29 U.S.C. § 1161, et seq., qualified beneficiaries of an employer's group health plan "who would lose coverage under the plan as a result of a qualifying event" are entitled to elect, within an "election period," continuation coverage for a specified duration under the plan. 29 U.S.C. § 1161. The statute defines "qualifying event" as one of six listed events which, "but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary." 29 U.S.C. § 1163. Termination of the covered employee's employment, other than by reason of the employee's gross misconduct, is one of the six listed events. Id. at (2). COBRA requires an employer to notify their health plan administrator within 30 days of an employee's qualifying event; the plan administrator then has 14 days to notify the qualified employee or beneficiary of their right to continuation coverage. 29 U.S.C. § 1166(2).[4]

The parties agree that Plaintiffs were terminated from Honeywell's employment by reason of the asset sale of the Towson

_____

[4] When, as here, the employer and the plan administrator are the same entity (Honeywell), that entity has a total of 44 days to notify qualified employees and beneficiaries of their COBRA rights. See Roberts v. National Health Corp., 963 F.Supp. 512, 515 (D.S.C. 1997), aff'd, 133 F.2d 916 (4th Cir. 1998).

facility to Raytheon on September 9, 1998.  It is undisputed that
Plaintiffs were never sent notices or election forms regarding
their COBRA rights after they were terminated in 1998, nor after
their health plan with Honeywell ended on March 31, 1999.
Plaintiffs allege that Honeywell's failure to provide notice of
their rights to continuing health care coverage constituted a
violation of COBRA.  They have filed a motion for partial summary
judgment only as to liability on this claim.  Defendant Honeywell
has responded with a cross-motion for partial summary judgment.

    Plaintiffs claim that their termination from Honeywell on
September 9, 1998 constituted a "qualifying event" that triggered
Defendant Honeywell's COBRA obligations.  Under the plain
language of COBRA, a qualifying event is one that would result in
a loss of coverage, but for COBRA's provisions for continuing
coverage.  29 U.S.C. § 1163.  The resulting loss of coverage need
not be simultaneous with the qualifying event.  See, e.g., 52
Fed. Reg. 22,716 (proposed Apr. 6, 1987); Gaskell v. Harvard
Coop. Soc., 3 F.3d 495, 500 (1st Cir. 1993); Phillips v.
Riverside Inc. 796 F.Supp. 403, 411 (E.D. Ark. 1992).  A
termination that does not result in a loss of coverage does not
constitute a qualifying event.  Fenner v. Favorite Brands Int'l,
1998 WL 249232, *5 (N.D. Ill. 1998).

    The threshold question here, then, is whether Plaintiffs'

8

termination from Honeywell by way of the asset sale resulted in a "loss of coverage" under COBRA. Plaintiffs contend that a loss of coverage occurred on March 31, 1999, when they were switched from the plan administered by Honeywell to the Raytheon health plan.    The COBRA statute does not define "loss of coverage." Proposed Treasury Department regulations for COBRA state that to "lose coverage" means "to cease to be covered under the same terms and conditions as in effect immediately before the qualifying event.... Moreover, ... a loss of coverage need not occur immediately after the event, so long as the loss of coverage will occur before the end of the maximum coverage period."[5] 52 Fed. Reg. 22,716, 22,725 (proposed Apr. 6, 1987). The "maximum coverage period" begins on the date of the qualifying event and ends when "the qualified beneficiary first becomes, after the date of the election...covered under any other group health plan...which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary...."  29 U.S.C.  1162(D)(i).[6]

If the Court were to stop the analysis here, it would seem

---

[5]  Proposed regulations serve as guiding, but not binding, authority. See Gaskell at 500.

[6]  The statute also provides for other conditions that end the maximum coverage period, but they are not relevant to this discussion.

9

fairly clear that Plaintiffs experienced a "loss of coverage" on March 31, 1999.  The terms and conditions of the Raytheon plan that began for Plaintiffs on April 1, 1999, are undoubtedly different from those of the Honeywell plan that just ended.[7]

The complication arises, however, because under the terms of the APA between Honeywell and Raytheon, the plaintiffs became enrolled in the Raytheon health plan, a plan which waived all limitations and exclusions for pre-existing conditions, immediately after their "loss of coverage" from the Honeywell-administered plan.  Plaintiffs concede that there was never a time when they were not covered by a group health plan during this period.  See Def.'s Cross-Mot. for Summ. J. on Count One, Ex. 3.

Under facts very similar to these, another court found that there had been no loss of coverage.  Chacosky v. Hay Group, Civil Action No. 89-8083, 1991 WL 12170 (E.D. Pa. Feb. 1, 1991).  The Chacosky court reasoned that because the plaintiff's previous employer had not terminated his coverage until he was eligible for his new employer's coverage, the previous employer had succeeded in providing coverage through the "maximum coverage period" required by COBRA.  Id. at *8-9.  The Chacosky court concluded that since the plaintiffs were covered by their same

---

[7]    Plaintiffs allege that their coverage under the Raytheon plan is less favorable than it was under the Honeywell plan. Pl.'s Reply Mem. at 12.

10

health plan until the day they enrolled in the new plan (which waived exclusions and limitations for pre-existing conditions), no loss of coverage occurred during the maximum coverage period, and thus, there had been no qualifying event.  Chacosky at *9. An application of this analysis to the present case would lead to the conclusion that no COBRA obligation ever arose.

Plaintiffs argue, however, that because the Raytheon plan was not identical to the Honeywell plan, Honeywell was obligated to provide notice and election forms as of March 31, 1999.  See Pl.'s Reply Mem. at 9.[8]  Yet, even if Plaintiffs are correct on this point, it does not get them very far.  Assuming, arguendo, that Honeywell's obligation to provide Plaintiffs with continuing coverage under COBRA arose on March 31, 1999, it would have immediately evaporated.  As soon as the Honeywell plan expired, Plaintiffs were covered under another group health plan that had waived any limitations or exclusions for pre-existing conditions, thus ending the "maximum coverage period" required of Honeywell under 29 U.S.C. § 1162(D)(i).  It would seem an odd result to

---

[8]    As correctly noted by Plaintiffs, when a loss of coverage occurs some time after the "qualifying event" that precipitated it, the legal obligation to provide timely notice of COBRA rights to beneficiaries arises at the loss of coverage–not at the time of the underlying event.  See Gaskell at 500 (citing COBRA's legislative history and administrative interpretation to conclude that the obligation to notify arises at loss of coverage).    Thus, if Honeywell had a COBRA obligation to notify, it arose on March 31, 1999, not on September 9, 1998.

11

find Honeywell liable for a COBRA violation which, if it occurred
at all, was instantly remedied.

Plaintiffs cannot avoid this result, as they have attempted
to do, by alleging that the terms and conditions of the Raytheon
plan were less favorable to Plaintiffs than the Honeywell plan.[9]
See Pl.'s Reply Mem. at 12.  The plain language of 29 U.S.C. §
1162(D)(i) makes no mention of differences or adequacy of
coverage among group health plans.  Id.  Furthermore, the Supreme
Court has firmly rejected the idea of evaluating the "gaps" in
coverage between a beneficiary's old and new plans for purposes
of determining whether COBRA rights have terminated.  Geissal v.
Moore Medical Corp., 524 U.S. 74 (1998).  The Court emphasized
that under section 1162(D)(i), COBRA rights will survive a
beneficiary's enrollment in another group health plan "not when
there is a 'gap' or difference between the respective coverages
of the two policies, but when the later acquired group coverage
excludes or limits coverage specific to the beneficiary's pre-

---

[9] Plaintiffs in one instance argue that the Raytheon plan
excluded or limited coverage for pre-existing conditions.  See
Pl.'s Reply Mem. at 9.  However, none of the evidence submitted
by Plaintiffs appears to support this contention.  Rather,
Plaintiffs' expert on health care benefits admits that in the
materials he examined concerning the Raytheon plan, "there was no
mention of any plan rules regarding the exclusion of pre-existing
conditions."  Pl. Mot. for Part. Summ. J., Ex. 8 at 3.  In
contrast, the APA clearly states that Raytheon agrees to waive
any such exclusions or limitations. Def.'s Cross-Mot. for Summ.
J. on Count One, Ex. 2A.

existing condition." Id. at 86. Even in the light most favorable to them, Plaintiffs have not presented any evidence of such exclusions or limitations of pre-existing conditions in the Raytheon plan. See infra at n. 5. Therefore, Defendant Honeywell's motion for partial summary judgment as to Count One will be granted.

### B.   Raytheon motion to dismiss (WMN-00-562)

After filing its cross-motion for summary judgment on Plaintiffs' COBRA claims, Defendant Honeywell filed a cross-claim against Raytheon, seeking indemnification and contribution arising out of the COBRA claims. Honeywell alleges that if any COBRA liability arose toward Plaintiffs, it arose at a time when Raytheon was contractually obligated under the asset purchase agreement to provide any required COBRA notice and continuing coverage to plaintiffs. Raytheon now moves to dismiss Honeywell's cross-claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Based on two independent reasons, the Court will grant Raytheon's motion.

First, as explained above in the discussion of the COBRA claims, this Court has found that Honeywell was not liable to Plaintiffs for their failure to provide COBRA notice or continuing coverage. Plaintiffs' termination from employment with Honeywell resulted in either no "loss of coverage" or, at

13

most, a technical loss that ended instantaneously with
Plaintiffs' enrollment in the Raytheon plan. Because Honeywell
is not liable for any violation of COBRA, its cross-claim against
Raytheon for indemnification in the case of liability should be
dismissed.

In addition, Raytheon's motion should be granted even if
Plaintiffs did have a legal right to COBRA notice and coverage in
connection with the asset sale. Honeywell bases its cross-claim
on a provision in the APA that shifts COBRA liability from
Honeywell to Raytheon for all qualifying events that are incurred
by Transferred Employees or their beneficiaries "after the
closing date" of the asset sale, which was September 9, 1998.
See Raytheon Mot. to Dismiss at 4. Honeywell argues that the
parties intended "qualifying event" to mean "the occurrence of
both a termination of employment and a loss of coverage." See
Honeywell Opp. to Mot. to Dismiss at 29. Therefore, Honeywell
contends that under the APA, any COBRA obligation that arose did
so on March 31, 1999, when liability had shifted to Raytheon.

A motion to dismiss should be granted when it "appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief." Conley
v. Gibson, 355 U.S. 41, 45-46 (1957). Here, Honeywell's argument
is soundly defeated by the clear language of the APA and COBRA's

14

plain meaning, legislative history, and interpretation by courts and the Treasury Department.  The APA provision at issue explicitly cites sections of the COBRA statute and uses the statutory term "qualifying event" with no indication that anything but the statutory definition was intended.  Def.'s Cross-Mot. for Summ. J. on Count One, Ex. 2A.[10]  The statute defines "qualifying event" by listing six events, including termination for reasons other than gross misconduct.  29 U.S.C. § 1163.  A "loss of coverage" is itself not a qualifying event; rather, it is the necessary result of the enumerated events that transforms them into "qualifying events."  Id.  Administrative and judicial interpretations of the statute have repeatedly recognized that a loss of coverage is a result of an underlying qualifying event, even if it occurs months later.  See, e.g., 26 C.F.R. § 54-4980B-6; Gaskell; Phillips.

Honeywell simply cannot escape the fact that if a qualifying event occurred in connection with the asset sale, it

---

[10]  Honeywell argues that New York law should govern interpretation of the APA.  See Honeywell Opp. to Mot. to Dismiss at 28.  Because the APA's contractual language incorporates by reference the language and provisions of COBRA, New York law would not change the result here. See Advanced Refractory Technologies, Inc. v. Power Authority of the State of New York, 603 N.Y.S.2d 285, 287 (N.Y. 1993) (holding that "provisions of a Federal act, when incorporated by reference into a contract between the parties, are part of the agreement and, indeed, are controlling to the extent inconsistent with other provisions of the contract").

occurred on the day Plaintiffs were terminated, September 9,
1998. That Plaintiffs may have lost coverage over six months
later only transforms their termination into a qualifying event;
it does not change the date of that event.[11] Under the clear
terms of the APA, Honeywell-not Raytheon-was legally responsible
for a qualifying event incurred on September 9, 1998. Therefore,
even if it were determined that a COBRA obligation arose in
connection with the asset sale, the obligation would have
belonged to Honeywell and this motion to dismiss Honeywell's
cross-claim would still be granted.

## C. ERISA Claims - Failure to Provide Notice of Reduction of Future Benefit Accruals (Count 7 of WMN-00-562)

Plaintiffs claim that Defendant Honeywell violated section
204(h) of ERISA[12] by failing to notify them of amendments to
Plaintiffs' pension plans that allegedly reduced Plaintiffs'
future benefit accruals after the asset sale to Raytheon.
Defendant Honeywell argues that it was never under a legal
obligation to provide such notice, and now moves for partial
summary judgment on this count.

The following facts concerning Plaintiffs' pension benefits

---

[11] It is true that the obligation to send notice and
election forms is triggered by the loss of coverage, see infra at
n. 7, but this too fails to alter the date of the underlying
qualifying event.

[12] 29 U.S.C. § 1054(h).

16

are undisputed.  After the asset sale on September 9, 1998,

plaintiffs ceased to be active participants in the Honeywell

pension plan and were transferred immediately into Raytheon's

pension plan, pursuant to the APA.  See Def.'s Mot. for Part.

Summ. J. on Count 7, Ex. A.  Also effective on that date were

three amendments that Honeywell had made to its pension plan,

namely:  (1) all Transferred Employees were made eligible for

immediate vesting, even if they had not completed the five years

of service normally required for vesting; (2) Transferred

Employees within 24 months of attaining their regular early

retirement age, "80-Point" early retirement age, or normal

retirement age, were made eligible for "Bridge Leave" to early

retirement; and (3) Transferred Employees with less than 25 years

of service to Honeywell and who remained employed with Raytheon

for at least one year were given an increase of 2% of their

retirement benefits.  See Def.'s Mot. for Part. Summ. J. on Count

7, Ex. 2F.  Finally, Honeywell and Raytheon agreed that for two

years after the asset sale, Honeywell would not rehire any of its

former employees from the Towson facility unless they had been

terminated by Raytheon.  Id. at Ex. 2A.

ERISA provides, in pertinent part, that "[a defined benefit

plan] may not be amended so as to provide for a significant

reduction in the rate of future benefit accrual, unless, after

adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides written notice, setting forth the plan amendment and its effective date" to each plan participant.  ERISA § 204(h).  At the time of the asset sale, Plaintiffs were vested participants in Honeywell's pension plan, which the parties agree was a "defined benefit plan" administered by Honeywell.  Honeywell concedes that it did not send Plaintiffs any notice of the amendments before they went into effect.

Plaintiffs present two theories of Honeywell's liability under § 204(h).  First, Plaintiffs contend that the plan amendment providing for a 2% increase in retirement benefits to some (but not all) transferred employees resulted in a "significant reduction in the rate of future benefit accrual" for Plaintiffs.  Pl. Opp. to Def.'s Mot. for Part. Summ. J. at 3. Plaintiffs' second argument is that the two-year hiring freeze subsequent to the asset sale that prevented Plaintiffs from working at Honeywell (and thus from accruing future pension benefits during that time), also resulted in a "significant reduction in the rate of future benefit accrual."  See Id. at 3-4.

The Court will first address Plaintiffs' claim regarding the 2% increase for employees with less than 25 years of service.

18

Purely as a matter of logic, the Court is hard-pressed to understand how a benefit increase for some employees results in a "significant reduction" for others.[13]    Plaintiffs' argument is at odds with the plain meaning of "reduction in rate" and ignores case law interpreting what constitutes such a reduction.    See, e.g., Koenig v. Intercontinental Life Corp., 880 F.Supp. 372, 375 (E.D. Pa. 1995) (finding "reduction in rate" where plaintiffs' pension plan was merged with another plan and the new formula for calculating future benefits resulted in a significant decrease); Pickering v. USX Corp., 809 F.Supp. 1501, 1562 (D. Utah 1992) (finding that company's change to the years of service requirement for receiving pension plan benefits was an amendment within the scope of ERISA § 204(h)); Davidson v. Canteen Corp., 957 F.2d 1404, 1407 (7th Cir. 1992) (holding that a change in the definition of "compensation" for purposes of calculating benefits required ERISA notice).    In contrast, Plaintiffs here have failed to present any evidence that the increase given to some employees

---

[13]    Furthermore, plaintiffs concede that those plaintiffs in the class with less than 25 years of service at the time of the asset sale were qualified to benefit from the 2% increase.    Under the terms of the amendment, however, they needed to work for Raytheon for 1 year before receiving the increase.    These plaintiffs make the curious argument that they "had their normal retirement benefits at age 65 reduced because they did not receive a 2% increase from September 9, 1998 until September 9, 1999."    Pl.'s Opp. to Def.'s Mot. for Part. Summ. J. on Count Seven, at 3.

resulted in any negative change to the calculation formula, years of service requirement, or any other factor involved in determining the rate of their future benefits.

The Court is similarly unpersuaded by Plaintiffs' conclusory statements that a two-year hiring freeze by their former employer constitutes a reduction-significant or otherwise-in the rate of future benefit accruals. When Honeywell sold the Towson facility to Raytheon, Plaintiffs were terminated from Honeywell and began employment with Raytheon. As a result, Plaintiffs ceased active participation in the Honeywell pension plan and enrolled in the Raytheon plan. See Def.'s Mot. for Part. Summ. J. on Count Seven, at 11. Nothing in the language of ERISA § 2-4(h) purports to require notice of future pension plan benefits that stop accruing due to the plan participant's termination from employment. A Treasury Department regulation further clarifies that no ERISA notice is required for an employee whose pension benefits cease to accrue due to the sale of his employer to another company. 26 C.F.R. § 1.411(d)-6, Q&A 15(a) (explaining that in such a scenario, "no...notice is required because no plan amendment was adopted that reduced the rate of future benefit accrual").

Plaintiffs argue that the regulation cited above has "no applicability to the instant case" because the hiring freeze

20

constitutes a "post-termination amendment" that effectively reduced their benefits by denying them the opportunity to work at Honeywell and continue earning benefits.  <u>See</u> Pl.'s Opp. to Def.'s Mot. for Part. Summ. J. on Count Seven at 9.  By this reasoning, any person who suffers a loss of employment would experience a "reduction in benefits" within the scope of ERISA § 204(h) by being denied the opportunity to accrue future benefits. The Court will not adopt such an unreasonably expansive interpretation of the statute.[14]  Accordingly, Defendant Honeywell's motion for partial summary judgment as to Count Seven of the Complaint will be granted.

### D.   ERISA Reporting and Disclosure Act Violations (Counts 5 and 6 of WMN-00-562; Count 1 of WMN-00-2749)

This discussion pertains to both Civil Action WMN-00-562 (Plaintiffs Mason and Alkins) and Civil Action WMN-00-2749 (Plaintiffs Emala and Wright).  All four plaintiffs are former Honeywell employees who have brought claims against Defendant Honeywell for violations of ERISA's reporting and disclosure provisions.  Due to the significant overlap of factual and legal issues among the four claims, the Court will address them

---

[14]   The Court also questions the validity of Plaintiffs' claim that the non-solicitation agreement ("hiring freeze") between Honeywell and Raytheon constitutes a "plan amendment" under ERISA § 204(h), but need not decide that issue here.

jointly.[15]  Plaintiffs Alkins, Wright, and Emala allege ERISA

violations stemming from their requests for documents relating to

their eligibility for early retirement. Plaintiff Mason's claim

involves his requests for documents relating to his eligibility

for retirement medical benefits.  Plaintiffs also seek to impose

statutory penalties on Honeywell for the alleged violations. They

now move for partial summary judgment on both liability and

damages; Defendant Honeywell opposes the motions.

      1.    Liability under ERISA § 104(b)(4)

The reporting and disclosure provisions of ERISA were

enacted to ensure that "'the individual participant knows exactly

where he stands with respect to the [employee benefit] plan.'"

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989),

citing H.R. Rep. No. 93-533, p. 11 (1973).  Section 104(b)(4)

states that: "The administrator shall, upon written request of

any participant or beneficiary, furnish a copy of the latest

updated summary plan description, and the latest annual report,

any terminal report, the bargaining agreement, trust agreement,

contract, or other instruments under which the plan is

established or operated.  The administrator may make a reasonable

charge to cover the cost of furnishing such complete copies...."

---

[15]  Plaintiffs Alkins, Emala, and Wright present almost
identical issues in their pleadings on this claim.

29 U.S.C. § 1024(b)(4). An administrator who does not comply
with such a request within 30 days of the request may, in the
court's discretion, be liable for up to $100 per day from the
date of non-compliance until the date of compliance. 29 U.S.C. §
1132(c)(1).

To establish liability, then, Plaintiffs must show that: (1)
they are "plan participants;" (2) they made a written request to
the plan administrator; (3) the documents they requested fall
within the scope of § 104(b)(4); and (4) Defendant Honeywell (the
plan administrator) failed to comply with their requests.

            a.    The "Plan Participant" Requirement

ERISA defines a plan participant as "any employee or former
employee of an employer...who is or may become eligible to
receive a benefit of any type from an employee benefit plan which
covers employees of such employer...or whose beneficiaries may be
eligible to receive any such benefit." ERISA § 3(7); 29 U.S.C. §
1002(7). The Supreme Court has recognized that the statutory
definition should not be limited to include only those claimants
who are in fact entitled to benefits. Firestone at 117-18.
Rather, the definition also includes claimants with a "reasonable
expectation of returning to covered employment," and "former
employees with colorable claims that they will prevail in suits
for benefits; and...former employees with colorable claims that

23

they will fulfill eligibility requirements in the future." Id.

Honeywell does not dispute that when Plaintiffs Alkins, Emala, and Wright made document requests, they were plan participants under ERISA. Although Plaintiffs were denied early retirement under the Honeywell plan, Defendant does not argue that Plaintiffs' requests were invalid for lack of plan participant status.[16]

Honeywell does dispute Plaintiff Mason's alleged status as a "plan participant" at the time he made his request for documents. Plaintiff Mason had also been an active plan participant in Honeywell's pension plan until the asset sale on September 9, 1998, when he became a Raytheon employee. In March, 2000, while still employed by Raytheon, Plaintiff Mason requested a current copy of the Honeywell Retiree Medical Plan Summary Plan Description. Pl. Mason's Mot. for Part. Summ. J. on Counts Five and Six, Ex. 7B. Defendant Honeywell asserts that Plaintiff Mason was not a plan participant in March 2000 because all Honeywell employees had been informed after the asset sale that they would become ineligible for Honeywell retiree medical benefits if they remained employed with Raytheon after December

---

[16] The Court notes that although Honeywell denied plaintiffs' applications for early retirement, the record lacks any indication that Honeywell ever ruled on plaintiffs' appeals of those denials.

24

31, 1998.  See Def.'s Opp. Mot., Ex. 1B.  Since Plaintiff Mason

remained employed with Raytheon past December 31, 1998, he was

not eligible for Honeywell retiree medical benefits as of March

2000.  See Coyne & Delaney Co. v. Selman, 98 F.3d 1457, 1462 n. 4

(4th Cir. 1996) (noting that an employee who clearly did not meet

eligibility criteria was not a "plan participant" under ERISA);

Gardner v. E.I. Dupont Nemours & Co., 165 F.3d 18 (Table), 1998

WL 743669, *3 (4th Cir. 1998) (explaining that "[i]t is

irrelevant if a plaintiff... thought he was or should have been a

participant") (emphasis in original).

        Defendant Honeywell also attempts to defeat Plaintiff

Mason's status as a plan participant by asserting that he "had

absolutely no 'reasonable expectation of returning to covered

employment' at Honeywell."  Def.'s Opp. Mem. at 15.  Defendant's

basis for this assertion is Honeywell's agreement not to re-hire

any employees who had transferred to Raytheon for two years after

the asset sale.  When Plaintiff Mason made his request in March

2000, however, only approximately 6 months of the "hiring freeze"

remained, raising the possibility that Plaintiff Mason may have

reasonably expected to return to Honeywell's employment in the

fall and resume active plan coverage.  Compare, Coyne & Delaney

Co., 98 F.3d at 1462 n. 4 (finding that the employee's extremely

poor health made it "patently unreasonable to expect that he

would return to covered employment any time in the foreseeable future"). Therefore, Plaintiff Mason satisfies this prong of the <u>Firestone</u> definition of "plan participant" under ERISA.

        b.   The "Written Request" Requirement

The written requests for documents of all four Plaintiffs were submitted to the Honeywell plan administrator by Plaintiffs' attorneys.[17] <u>See</u> Pl. Mason's Mot. for Part. Summ. J. on Counts Five and Six, Ex. 1B, 5A, 6A. Honeywell, citing one case from the Sixth Circuit, argues that letters from attorneys do not satisfy the "written request" requirement of ERISA. <u>See</u> Honeywell Opp. at 18-19, citing <u>Bartling v. Fruehauf Corp.</u>, 29 F.3d 1062 (6th Cir. 1994). In the Fourth Circuit, however, courts have long found liability (and often, imposed statutory penalties) when document requests were from attorneys, even when unaccompanied by formal authorization. <u>See</u>, <u>e.g.</u>, <u>Davis v. D.L. Featherstone</u>, 97 F.3d 734 (4th Cir. 1996); <u>Sedlack v. Braswell Services Group, Inc.</u>, 134 F.3d 219 (4th Cir. 1998); <u>Lebefre v. Westinghouse Electric Corp.</u>, 549 F.Supp. 1021, 1025 (D. Md. 1982).

Furthermore, Honeywell's own course of conduct undermines its argument. Defendant communicated exclusively with

---

    [17]  Plaintiff Mason alleges that he personally requested documents in October 1998, but failed to substantiate this information with any admissible evidence.

Plaintiffs' attorneys on matters relating to the document requests for well over a year without raising any concerns about the attorneys' authorization to act for Plaintiffs. Defendants raise this concern for the first time in their opposition to Plaintiffs' motion for summary judgment. Id. at 18-19. Had their concern been genuine, Defendant could have asked for authorization prior to exchanging numerous communications with Plaintiffs' counsel. See, Sedlack, 134 F.3d at 226.

The Court also finds unpersuasive Defendant's argument that Plaintiffs' requests do not satisfy the statute because they were sent to inaccurate plan administrator addresses. Defendant, however, does not deny receiving the requests. Plaintiffs provide mailing receipts showing the date of delivery. See Pl. Mason's Mot. for Part. Summ. J., Ex. 1C, 5B, 6B. Although the addresses may not have been the most accurate to ensure rapid delivery, Defendant received the requests and at no point asked Plaintiffs to send correspondence to a different address.

Plaintiffs also seek to hold Honeywell liable for ERISA violations based on the Defendant's allegedly delayed responses to document requests during discovery. Although letters from Plaintiffs' counsel satisfy the written request requirement under ERISA § 104(b)(4), document requests pursuant to Federal Rule of Civil Procedure 34 do not. The purpose of ERISA Reporting and

27

Disclosure Act provisions is not to provide an opportunity to litigate discovery issues. While the Court may take notice of Plaintiffs' repeated requests for documents, both before and after the initiation of a lawsuit, for the purpose of assessing penalties, incomplete or delayed responses to document requests during discovery do not form a basis for liability under 29 U.S.C. 1024(b)(4). Therefore, the Court rejects Plaintiffs' claims that seek to impose liability based solely on insufficient responses to discovery requests. See, e.g., Pl. Emala's Mot. for Part. Summ. J., Ex. 7; Pl. Mason's Mot. for Part. Summ. J., Ex. 3.

>           c.    The Requirement that Requested Documents be Within
>                 the Scope of ERISA § 104(b)(4)

ERISA does not require plan administrators to make blanket disclosures of all requested documents that pertain in some way to the employee benefit plan at issue. Rather, the statute limits required disclosure to "the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (emphasis added). The Fourth Circuit has found that this last category "encompasses formal or legal documents under which a plan is set up or managed." Faircloth v. Lundy Packing Co., 91 F.3d 648, 653

(4th Cir. 1996).  In order to determine whether Plaintiffs'
requests satisfy the scope of the ERISA provision, a brief
description of the documents requested by each plaintiff will be
helpful.

    In late 1998, Plaintiffs Alkins, Emala, and Wright made
requests through counsel for the "latest" pension plan document
and amendments "which affect...retirement benefits at age 55 and
65."  See, Def.'s Reply Mem., Ex. 1, Att. A (letter on behalf of
Plaintiff Alkins, dated 10/23/98); Emala Reply Mem., Ex. 1, Att.
A (letter on behalf of Plaintiff Emala, dated 9/28/98); Emala
Reply Mem., Ex. 2, Att. A (letter on behalf of Plaintiff Wright,
dated 10/29/98).  Defendant did provide Plaintiffs with the
requested plan documents (but not the amendments) in late 1998,
and thus, Plaintiffs do not seek to establish liability on the
plan documents.  Plan amendments that affect retirement benefits
clearly constitute "instruments under which the plan is
established or operated."  29 U.S.C. § 1024(b)(4).[18]

    In early 1999, Plaintiffs Alkins, Emala, and Wright applied
for and were denied the opportunity to "bridge" to early
retirement under the Honeywell plan.  They each were notified of
the denials by three almost-identical letters, all dated May 13,

_____

[18] Whether or not the plan amendments that were actually
provided to Plaintiffs satisfy this definition will be discussed
below.

1999, from R. Peter Mercer, then Honeywell's Vice President for Human Resources.  In his letters, Mr. Mercer referenced (and quoted excerpts from) the APA between Honeywell and Raytheon and a "special bridging agreement outside the Plan" that had been negotiated as part of the asset sale.  The letters did not indicate whether the special bridging agreement was a separate document or part of the APA.  Mr. Mercer specifically referred to parts of the APA that: (1) implemented the two year hiring freeze; (2) arranged a transition period wherein Honeywell would continue to administer certain benefit plans; and (3) provided for the eventual transfer of benefit programs to Raytheon.  See Pl. Mason's Mot. for Part. Summ. J., Ex. 1A; Pl. Emala's Mot. for Part. Summ. J., Ex. 1A, 3A.  The letters invited Plaintiffs' counsel to appeal and to "review any pertinent documents."  Id.

In response to these letters, counsel for plaintiffs Alkins, Emala, and Wright wrote three separate letters to Mercer requesting the following documents: (1) copies of the special bridging agreement; (2) copies of the entire APA; and (3) copies of any other document providing a two percent increase in the pension benefits of former Honeywell employees who remained with Raytheon through September 1999.  See, Pl. Mason's Mot. for Part. Summ. J., Ex. 1A, 5B, 6A.

Honeywell does not contest that the special bridging

agreement and information about the two percent increase in benefits fall within the scope of ERISA § 104(b)(4).  Both documents have a direct effect on employees' entitlement to and calculation of benefits.  Defendant does dispute, however, whether the entire APA falls within the statute, because it is a "detailed document addressing the terms of a complex corporate transaction" and not created primarily for establishing or managing benefit plans.  See Def.'s Opp. to Pl. Emala's Mot. for Part. Summ. J. at 13.

While it is true that much of the APA has nothing to do with benefit plans, some provisions bear directly on participants' benefits (e.g., Section 6.5, setting forth terms of the two percent increase for some employees) and the calculation of the companies' payment obligations on the pension plans (also Section 6.5).  See Def.'s Cross-Mot. for Part. Summ. J. on Counts One and Seven, Ex. 2A.  Furthermore, Mr. Mercer relied at least in part on the APA in his denial of Plaintiffs' active participant status and their requests to bridge to early retirement.  See Pl. Mason's Mot. for Part. Summ. J., Ex. 1A; Pl. Emala's Mot. for Part. Summ. J., Ex. 1A, 3A.  Even under the narrow construction adopted by the Faircloth court, portions of the APA controlled the management or operation of the Honeywell pension plan at issue here.

31

Plaintiff Mason made two requests for documents.  On March 20, 2000, he requested the retiree medical plan documents and amendments in place from 1997 to the date of his letter.  Mason Mot. for Part. Summ. J., Ex. 7, Att. B.  Then on August 2, 2000, Plaintiff Mason made a discovery request reiterating his request for "all amendments... pertaining to" the retiree medical plan from 1998 to date.  Defendant Honeywell does not dispute that plan documents and plan amendments affecting participants' benefits would fall within ERISA's scope, but rather contends that the amendments eventually provided to Plaintiff Mason had no bearing on his benefits.  This issue will be addressed below.

      d.   Non-compliance by Honeywell

Defendant Honeywell failed to respond to any of the above-mentioned document requests within 30 days of each request.  In several instances, Plaintiffs made more than one request for each document.  See, e.g, Pl. Emala's Reply Mem., Ex 1D (letter of November 5, 1998, reiterating Plaintiff's request of September 28, 1998).  Defendant concedes that it did not respond to the requests within the statutory timeframe, but rather offers other defenses or explanations for its delay.  See Def.'s Opp. to Pl.'s Mot. for Summ. J..  To the extent that Defendant argues that it complied with Plaintiffs' requests by summarizing certain documents in letters, or by quoting excerpts from those

documents, the Court reminds Defendant that the plain language of
the statute requires the plan administrator to "furnish a copy"
of the requested document, not a summary, and that the statute
reiterates this requirement by allowing the administrator to
charge for the cost of "furnishing such complete copies."    29
U.S.C. § 1024(b)(4) (emphasis added); see also, Sedlack, 134 F.3d
at 227 (emphasizing that regulations require administrator to
furnish a copy of the document, not merely make it available for
copying).

        The most serious accusation of non-compliance by Defendant
arises out of a number of plan amendments that Plaintiffs claim
they requested in 1998 but were not provided until mid-2001.
Plaintiffs allege that they only obtained the plan amendments in
question by conducting their own investigation of plan amendments
listed on an I.R.S. "Form 5500" filed by the plan in 1998.    See
Pl.'s Mem. in Further Supp. at 4.    While it is true that there
were plan amendments that Defendant did not provide pursuant to
Plaintiffs' requests, Plaintiffs have failed to show that those
amendments had any bearing on Plaintiffs' benefits.    In contrast,
Defendants have demonstrated that all but one of the plan
amendments in question did not pertain to plaintiffs' 1998
requests for amendments "which affect [Plaintiffs'] retirement
benefits at age 55 and 65."    The one item from this request that

33

did trigger Honeywell's ERISA liability is the September 1998
Plan Amendment (affecting the benefits of employees who
transferred to Raytheon), which was apparently provided to
Plaintiffs' counsel on September 3, 2000. See Pl.'s Mem. in
Further Supp., App. A.

Plaintiffs also allege that Honeywell failed to respond to
Plaintiff Mason's request for plan amendments to the Retiree
Medical Plan until July 2001. All but two of those amendments,
however, were attached to Defendant's Cross-Motion for Summary
Judgment as to Counts One and Seven of Plaintiff Mason's
Complaint, filed on February 5, 2001 (Paper No. 71). The
remaining two amendments did not pertain to Plaintiff Mason, as
they involved the merger of another pension plan into the
Honeywell plan and an adjustment applicable only to active
employees of Honeywell as of September 1999, which Plaintiff
Mason was not. See Pl.'s Supp. Mem. Ex. 13, 17.

Plaintiffs further contend that Defendant should be liable
for withholding certain documents from Plaintiffs Emala and
Wright that it had previously provided to counsel in response to
a request from Plaintiff Alkins. Normally, disclosure violations
are to be treated as separate violations with respect to each
participant. 29 U.S.C. § 1132(c)(1). Here, however, all four
plaintiffs are represented by the same counsel and submitted many

34

of the same requests.  Plaintiffs' counsel had previously
accepted one set of documents on behalf of more than one
plaintiff.  Given this earlier course of conduct, and the plain
fact that Defendant did eventually produce the documents at issue
here, the Court finds that the documents requested by Alkins,
Emala, and Wright in the spring of 1999 and provided to counsel
on September 3, 2000 for Plaintiff Alkins were effectively
provided to Plaintiffs Emala and Wright at that time as well.

In order to summarize the foregoing discussion of
Defendant's liability, and to clarify the potentially confusing
timetable of Defendant's non-compliance with plaintiffs'
requests, the Court offers the following table:

| Plaintiff | Document | Date Requested | Date Provided |
|---|---|---|---|
| Alkins | Special Bridging Agreement | 6/16/99 | 9/3/00 |
| | Two percent increase information | 6/16/99 | 9/3/00 |
| | Asset Purchase Agreement | 6/16/99 | 9/3/00 |
| | "latest" plan amendments as of late 1998 (September 1998 amendment only) | 10/23/98 | 9/3/00 |
| Emala, Wright | Special Bridging Agreement | 5/28/99 | 9/3/00 (effectively) |

| | Two percent increase information | 5/28/99 | 9/3/00 (effectively) |
|---|---|---|---|
| | Asset Purchase Agreement | 5/28/99 | 9/3/00 (effectively) |
| Emala | "latest" plan amendments as of late 1998 (September 1998 amendment only) | 9/28/98 | 9/3/00 |
| Wright | "latest" plan amendments as of late 1998 (September 1998 amendment only) | 10/29/98 | 9/3/00 |
| Mason | Plan document for Retiree Medical Plan | 3/20/00 | 9/3/00 |
| | Amendments to Retiree Medical plan from 1997-March 2000 | 3/20/00 | 2/5/01 |

Based on the above discussion, the Court finds that even when the evidence is viewed in the light most favorable to the Defendant, all four plaintiffs in these cases have established Defendant's violations of ERISA § 104(b)(4) as a matter of law. The Court now turns to the question of statutory penalties under 29 U.S.C. § 1132(c)(1).

2.    Statutory Penalties

The imposition of monetary penalties for violations of ERISA § 104(b)(4) is within the discretion of the Court. 29 U.S.C. § 1132(c)(1). Penalties may be as high as $100 per day from the date of noncompliance. Id. Several factors guide the decision

36

whether to impose penalties, and if so, in what amount.  Courts

look primarily to two factors:  prejudice to the plaintiff and

the nature of the administrator's conduct in responding to

requests.  Davis, 97 F.3d at 737.  Although prejudice is relevant

to the Court's determination, it is not a prerequisite to

imposing a penalty.  See, Curry v. Contract Fabricators, Inc.

Profit Sharing Plan, 891 F.2d 842, 847 & n. 10 (11th Cir. 1990).

The statute's penalty provision "is unrelated to any injury

suffered by the plan participant," and is not intended to

compensate plaintiffs for harm.  Glocker v. W.R. Grace & Co., 68

F.3d 460 (Table), 1995 WL 600468, *3 (4th Cir. 1995).  Rather,

section 1132(c) "is intended to punish noncompliance with the

employer or administrator's disclosure obligations."  Daughtery

v. Honeywell, Inc., 3 F.3d 1488, 1494 (11th Cir. 1993).  Courts

have also described the penalty provision as "designed more to

punish the intransigent administrator and to teach ERISA

fiduciaries a needed lesson than to compensate the pensioner for

actual loss."  Id., citing Sandlin v. Iron Workers Dist. Council,

716 F.Supp. 571, 574 (N.D. Ala. 1988), aff'd, 884 F.2d 585 (11th

Cir. 1989).

Unfortunately, it seems as though Defendant Honeywell failed

to learn its lesson eight years ago when it suffered a penalty

in a 1993 ERISA Reporting and Disclosure Act case.  See,

Daughtery. In that case, one former employee of Honeywell brought an ERISA action arising out of Honeywell's failure to provide a statement of her benefits for one year after her written request. Id. Honeywell provided no explanation for the delay, and although there was no evidence of prejudice to the plaintiff, the Eleventh Circuit remanded to the District Court to impose "an appropriate penalty within the statutory range of up to $100 a day." Id. at 1495.

In contrast to the facts of Daughtery, the two cases now before the Court involve four former Honeywell employees with numerous document requests, many of which remained unfulfilled by Honeywell for a year or more. The Court is mindful that, as discussed above, some of Plaintiffs' requests fell outside the scope of ERISA § 104(b)(4), and that Plaintiffs sought to impose liability for some time delays that extended beyond Defendant's actual dates of production. The numerosity and length of delays in this case, however, undermine Defendant's position that it was "merely an inadvertent administrative error that occasioned the delay." Def.'s Opp. to Mot. for Part. Summ. J. on Counts Five and Six, Ex. 1 at ¶ 17.

Defendant Honeywell also argues that no penalty should be imposed in these cases because Plaintiffs suffered no prejudice as a result of the delays. It is true that Plaintiffs have not

presented evidence that their entitlement to benefits would have differed had Defendant complied with ERISA by promptly responding to their requests. On the contrary, for example, Plaintiffs Alkins, Emala, and Wright did benefit from the two-percent benefit increase for Raytheon employees in September 1999, even though they had not received the documents describing the increase. Pl. Mason's Mot. for Part. Summ. J., Ex. 1E; Pl. Emala's Mot. for Part. Summ. J., Ex. 1D.

Harm to plaintiffs is not measured only by reference to the ultimate effect on their employee benefit plans, however. Rather, "[f]rustration, trouble, and expense are relevant factors for a district court to consider in deciding whether to impose a penalty." Davis, 97 F.3d at 738. Plaintiffs were forced to wait many months before acquiring the plan documents that would, as Congress has explained the statute's purpose, let each plaintiff "know exactly where he stands with respect to the plan." Firestone, 489 U.S. at 118, citing H.R. Re. No. 93-533, p. 11 (1973). Even if the ultimate answer for Plaintiffs was that they were ineligible for the benefits they sought, the frustration and uncertainty caused by Defendant's failure to provide documents that may have answered their questions cannot be dismissed.

Plaintiffs also claim that they were injured by having to engage counsel and initiate lawsuits to obtain the documents.

Although Plaintiffs need not prove monetary damages, trouble and expense are pertinent to the Court's inquiry. Curry, 891 F.2d at 847 n. 10. Here the inquiry is complicated by a number of factors. First, Plaintiffs had already engaged counsel in some capacity when they submitted their initial document requests (in the form of letters written by counsel) to Honeywell in 1998. Second, although Plaintiff Alkins filed his joint Complaint with Plaintiff Mason after his first document request in 1999, the lawsuit was initiated before Plaintiff Mason's first request in March of 2000. Plaintiffs Emala and Wright filed their Complaint on September 13, 2000, when they arguably believed that their requests were unfulfilled, but after the date on which the Court has now deemed the documents were indeed provided to counsel. Although plaintiffs cannot claim to have initiated litigation solely for the purpose of obtaining the documents, there is no question that their attorneys' efforts led at least in part to Honeywell's eventual satisfaction of their requests.[19]

In order to recover statutory damages, a plaintiff need only show that the defendant failed to comply with 29 U.S.C. § 1024(b)(4). Plaintiffs in these two actions have done so. The maximum penalty that could be imposed is $100 per day for each

---

[19] All four plaintiffs also brought additional claims against Defendant Honeywell in their complaints and in later amended complaints.

day of non-compliance.  29 U.S.C. § 1132(c)(1).  Courts have

reduced this penalty when there is an absence of prejudice to the

plaintiffs in the form of reduced plan benefits.  See, e.g,

Sedlack, 134 F.3d at 227 (upholding a $20 per day penalty).  A

reduction is also proper when there is not evidence of bad faith

by the defendant.  Brooks v. Metrica, 1 F.Supp.2d 559 (imposing

an $80 per day penalty).  Here, most of Plaintiffs' allegations

of bad faith by Honeywell stem from the plan amendments that

surfaced after an inspection of the plan's I.R.S. forms.  These

allegations have been rejected by the Court.  See infra.

Defendant cannot claim to have entirely clean hands in this

matter, however.  After denying Plaintiffs Alkins, Emala, and

Wright their bridge to early retirement, Honeywell delayed almost

a year and a half before responding to requests for the very

documents referenced in the denial letters.  Furthermore, this is

not the first instance of Honeywell's noncompliance with this

statute. See Daughtery.

     For the foregoing reasons, the Court finds that reduced

statutory penalties pursuant to 29 U.S.C. § 1132(c)(1) are

appropriate in these cases.  The Court awards each plaintiff a

penalty of $80 per day for each day of the entire period of

41

Honeywell's non-compliance with their requests.[20]  For Plaintiff

Alkins, the Court awards a penalty of $80.00 per day for the

period between November 23, 1998 (thirty days after his initial

request) and September 3, 2000, when his requests were finally

fulfilled.  For Plaintiff Emala, the Court awards a penalty of

$80.00 per day for the period between October 28, 1998 (thirty

days after his initial request) and September 3, 2000.  For

Plaintiff Wright, the Court awards a penalty of $80.00 per day

for the period between November 29, 1998 (thirty days after his

initial request) and September 3, 2000.  For Plaintiff Mason, the

Court awards a penalty of $80.00 per day for the period between

April 20, 2000 (thirty days after his initial request) and

February 5, 2001, when his request was ultimately fulfilled.

    E.   Attorneys' Fees and Costs

    ERISA allows the award of reasonable attorneys' fees and

costs in the Court's discretion.  29 U.S.C. § 1132(g)(1).  There

is no presumption in favor of awarding attorneys' fees to the

prevailing party, however.  See Quesinberry v. Life Ins. Co. of

North America, 987 F.2d 1017, 1029 (4th Cir. 1993).  Rather, the

Fourth Circuit has adopted a five-part test for determining

---

[20]    Although this calculation is imprecise, as it covers
periods when plaintiffs had more than one outstanding request
with Honeywell, it is within the Court's discretion to devise a
penalty that is best in keeping with the purpose of 29 U.S.C. §
1132(c)(1).

whether to award fees under § 1132(g)(1).  Id.  The five factors

are:

> (1) the degree of opposing parties' culpability or
> bad faith;
> (2) ability of opposing parties to satisfy an
> award of attorney's fees;
> (3) whether an award of attorneys' fees against
> the opposing parties would deter other persons acting
> under similar circumstances;
> (4) whether the parties requesting attorneys' fees
> sought to benefit all participants and beneficiaries of
> an ERISA plan or to resolve a significant legal
> question resolving ERISA itself; and
> (5) the relative merits of the parties' positions.

Id. (citing Reinking v. Philadelphia American Life Ins. Co., 910

F.2d 1210, 1217-18 (4th Cir. 1990).  These factors are intended

to provide a general guideline for the Court, but no one of them

is decisive.  Id.

The Court finds that these factors favor an award of

attorneys' fees to the Plaintiffs as to Counts Five and Six of

WMN-00-562, and Count One of WMN-00-2749.  Despite Plaintiffs'

numerous requests for plan documents, amendments, and the asset

purchase agreement referenced in their denial of benefits,

Defendant did not provide copies until a lawsuit had been filed

and months (and in some cases, over a year) had passed.  Even

after providing copies, Defendant continued to insist that

Plaintiffs were not entitled to the documents, thereby requiring

Plaintiffs' counsel to proceed with litigation on this matter.

Although Defendant asserts that any delay was the result of inadvertent administrative errors, the Court has found that the number and nature of the documents withheld, and the length of the delays for all four plaintiffs, significantly undermine that position.

The second factor also counsels for an award of attorneys' fees, in that Honeywell is a large international corporation presumably with the ability to satisfy such an award.  Third, it would be hoped that an award of attorneys' fees in this case will deter the Defendant and other similarly situated employers from withholding requested plan documents from employees and former employees in the future.  While the Defendant may have intended to inform plaintiffs of their rights and eligibility through explanatory letters and document excerpts, ERISA explicitly requires that actual copies be provided to participants, whether or not they have a winning claim for benefits.  Fourth, plaintiffs in this case sought to protect the rights of other, similarly situated former Honeywell employees who had transferred to Raytheon after the asset sale and may also have had questions about their retirement benefits as a result.  Compare, Sedlack, 134 F.3d at 227 (noting that the relief sought was "of a purely personal nature," counseling against attorneys' fees).

An application of the fifth factor also weighs in favor of

44

Plaintiffs, although less strongly.  Plaintiffs' attorneys have
labored almost three years since the initial document requests in
late 1998.  Many of the requested documents fall within the scope
of ERISA § 104(b)(4) and should have been provided within 30
days.  In Defendant's favor, however, the plan amendments later
discovered listed on the I.R.S. Form 5500 were not responsive to
Plaintiffs' requests and therefore do not evidence bad faith by
Defendant.  Also, Plaintiffs lacked merit in claiming that
documents provided to their attorneys in response to one
plaintiff's request did not also satisfy the other plaintiffs'
requests for those same documents.  In sum, however, the majority
of Plaintiffs' claims have merit and they should be awarded
attorneys' fees and costs for their counsel's work involved in
pursuing their successful ERISA § 104(b)(4) claims.

The Court emphasizes that attorneys' fees and costs are to
be awarded to Plaintiffs only for the work directly related to
the Reporting and Disclosure Act claims (Counts 5 and 6 in WMN-
00-562, and Count 1 in WMN-00-2749).  The documents and
affidavits that have been submitted by Plaintiffs as to fees and
costs do not adequately specify whether the costs and hours
enumerated relate only to the above-mentioned counts of the
complaints.  The Court will make an award of reasonable
attorneys' fees and costs, based on materials provided and the

local rules, after parties have briefed the issue of hours and costs attributable specifically to these successful claims.

An order consistent with the findings herein shall issue.

William M. Nickerson
United States District Judge

Dated September 26, 2001